# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL M. FILIPEK, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 16 C 2902 |
| OAKTON COMMUNITY COLLEGE, | ) ) ) | |
| Defendant. | ) | Consolidated with: |
| DONALD A. KRZYZAK, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 16 C 3215 |
| OAKTON COMMUNITY COLLEGE, | ) ) ) | |
| Defendant. | ) | Consolidated with: |
| BARRY H. DAYTON, individually and on behalf of others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 16 C 6812 |
| OAKTON COMMUNITY COLLEGE, MARGARET B. LEE, JOIANNE SMITH, MICHAEL ANTHONY, KARL BROOKS, MAYA EVANS, TOM HAMEL, COLETTE HANDS, BONNIE LUCAS, and MUM MARTENS, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In November 2014, Oakton Community College announced that as of July 1,

2015, it would no longer employ any person receiving an annuity from the State Universities Retirement System (SURS). Affected SURS annuitants—all of whom worked at Oakton as part-time, or adjunct, faculty members prior to July 2015—filed three separate lawsuits against Oakton. Daniel Filipek and Donald Krzyzak have each alleged that Oakton's decision not to employ SURS annuitants violates the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, and the Illinois Human Rights Act (IHRA), 775 ILCS 5/2-102. Barry Dayton has filed a related suit against Oakton and a number of past and present administrators on behalf of himself and a class of similarly situated persons. In addition to alleging violations of the ADEA, Dayton alleges that Oakton's decision not to employ any SURS annuitants violates section 5 of Article XIII of the Illinois Constitution. Dayton also asserts a claim under 42 U.S.C. § 1983, as well as a claim for retaliatory discharge under Illinois tort law.

The Court consolidated all three lawsuits against Oakton and, in May 2017, granted Dayton's motion for collective and class certification. The certified class consists of "all part-time and adjunct faculty who were denied employment at Oakton Community College as the result of its policy not to employ or re-employ State Universities Retirement System annuitants and who are not 'affected annuitants' pursuant to 40 ILCS 5/15-139.5(b)(2)." *Dayton v. Oakton Cmty. Coll.*, No. 16 C 6812, 2017 WL 2152419, at *7 (N.D. Ill. May 17, 2017).

The defendants (collectively, "Oakton") have moved for summary judgment on all claims. For the reasons stated below, the Court grants Oakton's motion.

**Background**

Oakton Community College is a two-year community college with campuses in

2

Des Plaines and Skokie, Illinois. Oakton employs both full-time and part-time faculty. Included within Oakton's part-time faculty are adjunct faculty members who generally teach at least six credit hours in a given semester and are represented via the 2014-2017 Adjunct Faculty Association Collective Bargaining Agreement. Through the department chairs and coordinators, the deans of Oakton's various academic divisions offer adjunct faculty course assignments on a term-by-term basis. The maximum number of lecture hour equivalents (LHEs) an adjunct faculty member can teach during the academic year is 27. In addition to course assignments, adjunct faculty members may receive tutoring assignments, for which they are compensated on an hourly basis. Tutoring assignments do not count toward adjunct faculty's LHEs. Adjunct faculty also may receive additional pay for substitute teaching and attending meetings.

As a public community college, Oakton participates in the State Universities Retirement System. SURS provides retirement benefits to eligible employees of state universities and public community colleges. SURS-eligible employees make financial contributions to SURS until their retirement, at which point they may begin to collect a retirement annuity from SURS. Most SURS participants are not eligible to draw a SURS retirement annuity until they are at least 55 years old. *See* 40 ILCS 5/15-135. SURS participants who return to work for a covered university or community college *after* they have retired and begun collecting a SURS annuity ("SURS annuitants") are subject to earnings limitations. Under Illinois' Return to Work law, if a SURS annuitant who retired before reaching the age of 60 receives monthly compensation in excess of her monthly retirement annuity for "services performed after the date of retirement" for any employer covered by SURS, she is not entitled to the portion of her monthly annuity

3

that is funded by employer contributions. See 40 ILCS 5/15-139(b). If, during any academic year after retirement, an annuitant who retired at age 60 or over receives compensation that exceeds the difference between her highest annual pre-retirement earnings and her annual retirement annuity, the portion of the monthly retirement annuity that is provided by employer contributions is reduced accordingly. Id.

In 2012, the Illinois legislature amended the Return to Work law. The amended version of the law imposes a number of reporting requirements on SURS-covered educational institutions related to the employment and compensation of SURS annuitants. Specifically, covered institutions that employ or re-employ SURS annuitants are required to determine whether they are "affected annuitant[s]" under the statute. 40 ILCS 5/15-139.5(a). An employee who receives a SURS retirement annuity of at least $10,000 per year[1] "becomes an 'affected annuitant' on the first day of the academic year following the [first] academic year in which the annuitant" returns to work for a covered institution and earns compensation (excluding certain types of grants) in excess of 40 percent of her highest annual pre-retirement earnings. 40 ILCS 5/15-139.5(b)(2)-(3). A covered university or community college that employs an affected annuitant after August 1, 2013 is required to make an "employer contribution" to SURS equal to 12 times the amount of the gross monthly retirement annuity payable to that annuitant. 40 ILCS 5/15-139.5(e). Once an employee becomes an affected annuitant, she remains an affected annuitant unless she returns to active service and stops

---

[1] The 2012 amendment did not include an exemption for employees who receive a SURS annuity of less than $10,000 per year. This exception was added as part of a later revision to the law that went into effect in June 2015. See 2014 Ill. Legis. Serv. P.A. 98-1144 (codified as amended at 40 ILCS 5/15-139.5(b)(3)).

4

receiving a SURS annuity or receives a SURS annuity that is less than $10,000 for the year.  40 ILCS 5/15-139.5(b).

      Until July 1, 2015, Oakton often employed as adjunct faculty members retirees who had previously worked for Oakton or other covered educational institutions and thus were receiving a SURS retirement annuity.  In response to the changes in the Return to Work law, however, the college decided not to employ or re-employ any affected annuitants as of the fall of 2014.  Oakton's human resources department was tasked with monitoring SURS annuitants' earnings limitations and course loads for compliance with the Return to Work law.  To this end, Craig Ahrndt, assistant to the chief human resources officer, created a spreadsheet to monitor identified annuitants' course loads and track their earnings limitations, including the new limit on earnings in excess of 40 percent of an annuitant's highest annual pre-retirement earnings (the 40 percent limitation).  Mercedes Lizalde, a human resources specialist, began monitoring annuitants' earnings in spring or summer of 2013.  Instead of monitoring both the overall earnings limitation and the 40 percent limitation for each annuitant, Lizalde monitored only the overall earnings limitations for annuitants who retired before the age of 60.  Consequently, Oakton unwittingly employed three affected annuitants after September 1, 2014.  In October 2014, Lizalde discovered these errors and informed Mum Martens, Oakton's chief human resources officer, that the college would be required to pay SURS approximately $75,000 in employer contributions as a result.

      Sometime thereafter, then-president Margaret (Peg) Lee decided that Oakton would no longer employ any SURS annuitants, regardless of whether any individual annuitant posed a risk of becoming an affected annuitant for purposes of the Return to

5

Work law. The President's Council—which consisted of Oakton's vice presidents for academic affairs, student affairs, information technology, and business, the assistant vice presidents, and the chief human resources officer—discussed the issue at a meeting. The council specifically discussed the fact that some SURS annuitants were not at risk of becoming affected annuitants under the Return to Work law in light of the caps on adjunct compensation and the number of LHEs adjunct faculty were allowed to teach per semester. The council also discussed, however, the concern that it would be fiscally irresponsible to continue running the risk that a monitoring error could again result in the employment of an affected annuitant, potentially costing Oakton thousands of dollars. The council ultimately agreed that it was too great of a burden to employ any SURS annuitant, regardless of whether he or she was likely to become an affected annuitant.

In November 2014, the college announced its decision to discontinue the employment of all SURS annuitants effective July 1, 2015, except where the college's president determined that there was a specific and unique need. In a November 2014 e-mail to all SURS annuitants employed by the college, Martens explained that the decision was based on "challenges" in maintaining a system to monitor annuitants' earnings and "concerns about SURS' administration and enforcement" of the Return to Work law. Defs.' Statement of Undisputed Material Facts Ex. K at 104. A number of adjunct faculty members who were SURS annuitants, but not affected annuitants, urged the college to reconsider its decision and subsequently filed grievances through the Oakton Community College Adjunct Faculty Association (OCCAFA). They were unsuccessful. Ultimately, over 80 SURS annuitants—all of whom were age 55 or

older—lost their jobs at the college as a result of the decision.

Plaintiffs contend that the defendants' decision to terminate the employment of all SURS annuitants based on their status as annuitants violates the ADEA, IHRA, and the Illinois Constitution. They also assert a claim under 42 U.S.C. § 1983 and a retaliatory discharge claim. Defendants have moved for summary judgment on all claims.

## Discussion

Summary judgment is appropriate if there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Nicholson v. City of Peoria*, 860 F.3d 520, 522 (7th Cir. 2017). On a motion for summary judgment, the Court views all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Carson v. Lake County*, 865 F.3d 526, 532 (7th Cir. 2017). Courts must be especially cautious in applying the summary judgment standard to employment discrimination cases, because such cases often will turn on intent and credibility issues. *See Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Nonetheless, "the mere existence of *some* alleged factual dispute between the parties" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). "[A] genuine issue of material fact exists only if there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012).

**A.    ADEA and IHRA age discrimination claims**

The ADEA makes it unlawful for employers to take adverse employment actions against employees who are 40 years old or older because of their age. 29 U.S.C. §§

7

623(a), 631(a). The Supreme Court has held that, in addition to age-based disparate treatment claims, disparate impact claims are cognizable under the ADEA. *See Smith v. City of Jackson*, 544 U.S. 228, 240 (2005) (plurality opinion)[2]; *Carson*, 865 F.3d at 532. A disparate impact claim, which typically involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another," differs from a claim of disparate treatment in that it does not require proof of discriminatory motive. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Carson*, 865 F.3d at 532. The same analytical framework is used to assess employment discrimination claims brought under the IHRA. *See Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013); *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178, 545 N.E.2d 684, 687 (1989).

### 1. Disparate treatment

Liability in a disparate treatment case "depends on whether the protected trait (under the ADEA, age) *actually motivated* the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (emphasis added). Thus, to prevail on a disparate treatment claim under the ADEA, a plaintiff "must 'prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action.'" *Carson*, 865 F.3d at 532 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)).

In *Ortiz v. Werner Enterprises*, 834 F.3d 760, 765 (7th Cir. 2016), the Seventh

---

[2] A plurality of the Court concluded that a disparate impact theory was cognizable under the ADEA. *See id.* at 240. Justice Scalia concurred in the judgment because, in his view, the EEOC's reasonable interpretation of the ADEA as authorizing disparate impact claims warranted deference. *See id.* at 247 (Scalia, J., concurring in judgment).

Circuit clarified that the proper way to assess a disparate treatment claim at the summary judgment stage is to ask whether the admissible evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." The familiar *McDonnell Douglas* burden-shifting framework nonetheless remains a valid method of organizing and assessing circumstantial evidence of employment discrimination. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). To make out a prima facie case of discrimination under the *McDonnell Douglas* framework, the plaintiff must offer evidence showing that (1) she is a member of a protected class, (2) she was meeting the employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside her protected class were treated more favorably (or, in an age discrimination case, that she was replaced by someone substantially younger). *Carson*, 865 F.3d at 533; *see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Then, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its actions. *Carson*, 865 F.3d at 533 (citation omitted). If the employer provides such an explanation, the burden shifts back to the plaintiff to submit evidence that the explanation is pretextual. *Id.* Regardless of whether the plaintiff chooses to proceed under the *McDonnell Douglas* method of proof, however, "at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action *because of* her age." *Id.*

Defendants argue that summary judgment is warranted on the plaintiffs' disparate

treatment claim because no reasonable factfinder could conclude that age was a "but-for" cause of Oakton's decision not to employ any SURS annuitants after July 1, 2015. Plaintiffs contend that they have presented evidence sufficient to make out a prima facie case of disparate treatment under the *McDonnell Douglas* framework. They argue that a grant of summary judgment for the defendants is unwarranted because there are disputed factual issues regarding whether Oakton's given reason for the decision not to employ any SURS annuitants is pretextual.

      The first three elements of the plaintiffs' prima facie case are undisputed. Defendants contend that plaintiffs cannot make out a prima facie case because they cannot show that similarly situated employees who were substantially younger or who were not members of the protected class were treated more favorably. In *Carson v. Lake County*, an Indiana county that was in financial trouble offered a variety of retirement incentives to employees age 65 or older. *Carson*, 865 F.3d at 529. Under one of the incentive packages, retirees were promised five years of supplemental health insurance and permitted to return to work part-time. *Id.* Unfortunately, after a number of employees took the deal and were rehired part-time, the county determined that it was not financially feasible to keep the rehired retirees on its supplemental insurance plan. *Id.* The county made the decision to terminate all rehired retirees who were covered by the supplemental policy, and some of the fired retirees sued the county for age discrimination. *Id.* The Seventh Circuit concluded that the plaintiffs could not make out a prima facie case for discrimination under the *McDonnell Douglas* framework because they could not identify any younger, similarly situated employees who were not fired. *Id.* at 536. The court explained as follows:

> Plaintiffs were among the small group of rehired retirees who were employed part-time and insured under Medicare and the Aetna supplement. *All* such employees were fired. *All* employees (regardless of age) who remain employed by the County are not enrolled in the Aetna supplement. *All* retirees who benefit from the supplement are no longer employed by the County. Without an appropriate comparator group, plaintiffs cannot make out a prima facie case for discrimination and cannot prevail under the *McDonnel Douglas* framework.

*Id.*

Like the plaintiffs in *Carson*, the plaintiffs in the present case cannot show that any similarly situated employees were treated more favorably because there are no similarly situated employees. The plaintiffs were among a group of approximately 80 SURS annuitants who were employed part-time at Oakton. *All* SURS annuitants were fired, and *all* employees—regardless of age—who remain employed by the college are not SURS annuitants. Plaintiffs' attempt to distinguish *Carson* on the ground that the county terminated only those rehired retirees who were members of the supplemental insurance plan instead of terminating all rehired retirees misses the point. This contention does not address the plaintiffs' lack of a comparator group, and, as explained below, although Oakton could have devised a more narrowly tailored policy to avoid employing affected annuitants, the ADEA did not obligate the college to do so.

For these reasons, the Court concludes that the plaintiffs cannot make out a prima facie case of discrimination under the *McDonnell Douglas* framework. The Court therefore proceeds to evaluate whether the cumulative admissible evidence would otherwise permit a reasonable factfinder to conclude that Oakton's decision not to employ SURS annuitants was based on age.

Plaintiffs argue that three facts undermine the veracity of defendants' explanation for Oakton's decision to discontinue the employment of all SURS annuitants rather than

11

just those who ran a risk of becoming affected annuitants. Specially, plaintiffs contend that the defendants knew at the time of the decision that "a significant number of annuitants could *never* be impacted by the Return to Work law" because either (1) their annuities were less than $10,000 a year or (2) it was impossible for them to exceed their 40 percent earnings limitation in light of the cap on the number of LHEs adjunct faculty members were allowed to teach per semester and the maximum compensation rates for adjunct faculty. Pls.' Resp to Mot. for Summ. J. at 1-2, 9. Plaintiffs further contend that the defendants knew that the costs the college had incurred by inadvertently employing affected annuitants were the result of a mistake by a human resources employee. Defendants do not contest either point. Instead, they argue that terminating all SURS annuitants was the only way to make sure that the college would never again have to pay for employing an affected annuitant. Defendants knew that the college had inadvertently employed affected annuitants due to its failure to correctly monitor and identify those annuitants who might become affected annuitants; the decision to no longer employ any SURS annuitants eliminated the risk of a future similar mistake.

The imposition of a blanket ban on the employment of SURS annuitants was by no means the only option available to the college. Oakton could have attempted to craft a more narrowly tailored policy that would have allowed certain annuitants who were clearly not at risk of exceeding any SURS income limitation to keep their jobs. Its failure to do so, however, does not give rise to a reasonable inference that the decision was motivated by age discrimination. Plaintiffs also argue that Martens' statement that the decision not to distinguish between individual SURS annuitants based on risk of becoming an affected annuitant involved equitable considerations constitutes direct

12

evidence of discrimination because it is "simply another way of saying that the decision was to not employ people within a certain age range regardless of the actual impact of the [Return to Work] law." *Id.* at 11. This argument ignores the other obvious characteristic other than age shared by all of the affected employees: they were all SURS annuitants. Although an employee's age and status as a SURS annuitant are correlated, age and pension status remain analytically distinct concepts. *See Kentucky Ret. Sys. v. EEOC,* 554 U.S. 135, 143 (2008). Although all those affected by Oakton's decision were necessarily aged 55 or older, the decision had no effect on employees who were 55 years or older who were not SURS annuitants.

The Court concludes that even when all facts are viewed in the light most favorable to the plaintiffs and all reasonable inferences are drawn in their favor, they have failed to put forth evidence from which a reasonable factfinder could conclude that Oakton's decision was based on age rather than status as a SURS annuitant. *See Carson*, 865 F.3d at 529. Accordingly, the Court concludes that defendants are entitled to summary judgment on the plaintiffs' disparate treatment age discrimination claims under the ADEA and the IHRA.

### 2. Disparate impact

To make out a prima facie case under a disparate impact theory, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith*, 544 U.S. at 241. Instead, a plaintiff must demonstrate that "a 'specific, facially *neutral* employment practice caused a significantly disproportionate adverse impact based on age.'" *Carson*, 865 F.3d at 536 (quoting *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 68 (3d Cir. 2017)). The plaintiff

13

must provide statistical evidence of a significant age-based disparity and must also isolate and identify the specific employment practice that she contends is responsible for that disparity. *See Smith*, 544 U.S. at 241; *see also Carson*, 865 F.3d at 536 (plaintiff alleging disparate impact must offer "statistical evidence that the policy caused a significant age-based disparity") (quoting *Karlo*, 849 F.3d at 69).

Even if a plaintiff manages to establish a prima facie case for disparate impact, however, she cannot prevail if the challenged employment action is "based on reasonable factors other than age." 29 U.S.C. § 623(f)(1); *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 87 (2008). It is the employer's burden to prove that the challenged action was, in fact, based on reasonable factors other than age. *See id.* Thus, a defendant may prevail on summary judgment based on this defense only if a reasonable factfinder would be compelled to conclude that the employer's decision was based on reasonable factors other than age. *Cf. Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005) (if the plaintiff succeeds in making a prima facie case of unlawful retaliation, the court will grant summary judgment for the defendant only if a reasonable jury would be compelled to conclude that the same action would have been taken against the plaintiff in the absence of a retaliatory motive).

Defendants argue that plaintiffs cannot make out a prima facie case because they cannot establish that Oakton's decision to no longer employ SURS annuitants caused a significantly disproportionate adverse impact based on age. Defendants also contend that even if plaintiffs could make out a prima facie case, summary judgment is warranted because Oakton's decision to discontinue the employment of all SURS annuitants was based on a reasonable factor other than age—namely, the desire to

14

eliminate the risk of having to pay a penalty to SURS for employing an affected annuitant.

As a preliminary matter, plaintiffs have identified a specific, facially neutral employment practice that they allege adversely impacted them because of their age: Oakton's decision not to employ any SURS annuitant after July 1, 2015. The decision only affected employees who were age 55 or older, because younger employees would not yet be eligible to become SURS annuitants. This is likely is sufficient to establish a prima facie case under a disparate impact theory.

The Court next considers whether defendants have shown that the decision was "based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). Defendants contend that the decision to discontinue the employment of all SURS annuitants was based on a reasonable factor other than age. Specifically, they contend it was based on concerns about the burden of monitoring annuitants to ensure that they did not become affected annuitants under the Return to Work law, as well as the risk that the college might again have to pay an employer contribution to SURS for inadvertently employing an affected annuitant. Plaintiffs contend that this defense fails, for three reasons: (1) the defendants knew at the time they made the decision that some SURS annuitants could never become affected annuitants, (2) the defendants knew that the employer contributions they were required to pay to SURS for employing affected annuitants was the result of a monitoring error by a human resources employee, and (3) Martens' statement that the decision not to distinguish between individual SURS annuitants based on risk of becoming affected annuitants involved "equitable considerations" indicates that the decision was not actually driven by the Return to Work

15

law.

As previously noted in the discussion of plaintiffs' disparate treatment claim, none of the evidence cited by the plaintiffs undermines the defendants' explanation that the only sure way to prevent mistaken employment of an affected annuitant and the resulting payment to SURS was to discontinue the employment of all SURS annuitants. Though there may have been other reasonable and more narrowly tailored ways for Oakton to address this problem, no reasonable jury could find that its decision to no longer employ any SURS annuitants was unreasonable. *See Smith*, 544 U.S. at 243 ("Unlike [Title VII's] business necessity test, which asks whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the reasonableness inquiry includes no such requirement."). On these facts, a reasonable jury would be compelled to conclude that the decision to discontinue the employment of all SURS annuitants was based on reasonable factors other than age. The Court therefore grants summary judgment for the defendants on the plaintiffs' disparate impact age discrimination claims under the ADEA and the IHRA.

**B.     Section 1983 claim**

Section 1983 authorizes suits against state and local government officials to enforce rights under federal statutes and the Constitution. 42 U.S.C. § 1983; *Levin v. Madigan*, 692 F.3d 607, 611 (7th Cir. 2012) (citation omitted). "Section 1983 does not create substantive rights, but operates as a means for vindicating federal rights conferred elsewhere." *Id.* (citation omitted).

Plaintiffs allege that the defendants, acting under color of state law, violated the ADEA when they discontinued the employment of all SURS annuitants based on

concerns about the difficulty of ensuring compliance with the Return to Work law. Because plaintiffs have failed to adduce sufficient evidence from which a reasonable factfinder could conclude that the defendants violated the ADEA, defendants are entitled to summary judgment on plaintiffs' section 1983 claim.

**C.    Remaining state law claims**

Plaintiffs allege that Oakton's decision to discontinue the employment of all SURS annuitants violated the Illinois Constitution, which provides that "[m]embership in any pension or retirement system of the State . . . shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. art. XIII, § 5. Defendants contend that summary judgment is warranted on this claim because the Illinois Constitution does not guarantee a SURS annuitant any right to continued employment at a SURS-covered institution after retirement.

The pension protections enshrined in the Illinois Constitution do not extend so far as to protect a SURS annuitant's right to continued employment after retirement. As a court in this district explained in reference to a very similar claim, this state constitutional provision was adopted to secure employees' pension plans "as they existed when the employees agreed to an employment contract, and to protect the plans against legislative abrogation." *Kastel v. Winnetka Bd. of Educ., Dist. 36*, 946 F. Supp. 1329, 1342-43 (N.D. Ill. 1996). The Court sympathizes with those who elected to retire and begin receiving a SURS annuity with the expectation that their status as a SURS annuitant would not prevent them from continuing to work part-time as adjunct faculty members. But Oakton's decision not to employ SURS annuitants does not directly affect plaintiffs' ability to continue to collect their full annuity—which is what the Illinois

17

Constitution protects—and plaintiffs identify no SURS provision that would entitle them to simultaneously receive an annuity and engage in post-retirement employment. *Cf. id.* at 1343 (holding that the right not to have future employment made conditional on a surrender of early retirement pension rights is not a right protected by the Illinois Constitution because the pension plan itself establishes no such right). Because Oakton's decision does not impair the plaintiffs' pension rights and the Illinois Constitution does not protect SURS annuitants from having to choose between collecting an annuity and continuing part-time, post-retirement employment, plaintiffs' state constitutional claim fails as a matter of law.

Lastly, the plaintiffs allege that Oakton's decision not to employ any SURS annuitants beyond July 1, 2015 constituted retaliation against them for exercising their right to collect a SURS retirement annuity. Defendants argue that summary judgment is warranted on this claim because Illinois has not—and should not—recognize a claim of retaliatory discharge under such circumstances.

The Illinois Supreme Court has recognized a "limited and narrow tort of retaliatory discharge as an exception to the general rule of at-will employment." *Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 376, 706 N.E.2d 491, 492 (1998). To prevail on a retaliatory discharge claim, the plaintiff must show (1) that she was discharged; (2) in retaliation for her activities; and (3) that the discharge "violates a clear mandate of public policy." *Teruggi*, 709 F.3d at 661 (quoting *Blount v. Stroud*, 232 Ill. 2d 302, 314, 904 N.E.2d 1, 9 (2009)). Illinois courts have recognized claims for retaliatory discharge where an employee was discharged in retaliation for filing a workers' compensation claim and for engaging in whistleblowing conduct. *See*

*Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981) (whistleblowing); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978) (workers' compensation claim).

Plaintiffs point to no case law suggesting that Oakton's decision to discontinue the employment of SURS annuitants would be considered to violate a clear mandate of public policy. Plaintiffs attempt to analogize between their situation and the situation in *Kelsay v. Motorola*, where an employer first attempted to discourage an injured employee from filing a worker's compensation claim and then fired her for following through on the claim. *Kelsay*, 74 Ill. 2d at 179, 384 N.E.2d at 356. Plaintiffs argue that, just as the discharge in *Kelsay* was designed to prevent the employee from asserting her statutory right to worker's compensation, Oakton's decision to discontinue the employment of all SURS annuitants was designed to prevent employees from exercising their statutory rights to draw a SURS retirement annuity. This argument fails because the plaintiffs were already collecting SURS annuities when they were employed (or re-employed) by the college and they do not allege that Oakton previously discouraged its adjunct faculty from collecting a SURS annuity. There is simply no evidence that, in deciding to discontinue the employment of SURS annuitants, Oakton intended to discourage retirees from exercising their statutory right to collect a SURS retirement annuity. Indeed, regardless of whether such a discharge would be considered to violate a clear mandate of public policy, plaintiffs have produced no evidence from which a reasonable factfinder could conclude that they were discharged in *retaliation* for their participation in SURS.

The Court therefore grants summary judgment for the defendants on plaintiffs'

state constitution and retaliatory discharge claims.

## Conclusion

The Court grants plaintiffs' motions to file under seal [16 C 2902, dkt. no. 51] and to file excess pages [16 C 2902, dkt. no. 52]. For the reasons stated above, the Court grants the defendants' motion for summary judgment [16 C 2902, dkt. no. 46; 16 C 6812, dkt no. 66] and directs the Clerk to enter judgment in favor of the defendants in Case Nos. 16 C 2902, 16 C 3215, and 16 C 6812.

                                                                    MATTHEW F. KENNELLY
                                                                United States District Judge

Date: February 27, 2018